UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DFWS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:20-CV-2499-G |
| ATLANTIC CASUALTY INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the defendant Atlantic Casualty Insurance Company

("Atlantic")'s motion to dismiss for failure to state a claim.  Defendant Atlantic

Casualty Insurance Company's Rule 12(b)(6) Motion to Dismiss Certain of

Plaintiff's Claims ("Motion") (docket entry 11).  For the reasons set forth herein, the

motion is granted in part and denied in part.

### I.  BACKGROUND

#### A.  Factual Background

Starting on October 20, 2019, several tornadoes and other high wind-speed

weather events hit the Dallas, Texas area.  The plaintiff, DFWS, LLC ("DFWS"),

alleges that as a result, property it owns at 4821 Gaston Avenue, Dallas, Texas

"sustained heavy roof and structural damage." Plaintiff's Amended Complaint ("Complaint") (docket entry 9) at 2. DFWS makes several allegations about the structure of the roof and the damage sustained, leading DFWS to conclude "[t]he only reasonable cause of the damage to the roof system, the damage to the flashing and the ensuing interior leaks was the wind and storm event of October 20, 2019." *Id*. DFWS alleges that the roof has a modified bitumen roof system that adheres to the substrate, that a visual inspection of the roof showed evidence of ripples in the modified bitumen, and that such damage could only be caused by wind entering the roof system "either at the edge flashing or by uplift." *Id.* DFWS further alleges that air conditioner condensers installed on the roof were displaced, cracked, and sustained impact damage from flying debris. *Id.* at 2-3.

The parties agree that at the time, the property was insured by Atlantic under Policy No. M141000832-0. See *id.* at 2; Defendant Atlantic Casualty Insurance Company's Amended Answer and Affirmative Defenses ("Answer") (docket entry 13) at 2. DFWS submitted a notice of loss to Atlantic after discovering the damage. Answer at 4. Atlantic hired Vertex Companies ("Vertex"), an engineering firm, to investigate the damage and determine a cause. See *id.* at 5. DFWS alleges that Vertex attributed the damage to a lack of maintenance and ponded water on the surface of the roof which allowed moisture to "penetrate the building envelope." Complaint at 3. DFWS further alleges that this finding was contrary to the evidence

and ignored that "there were no observable leaks to the interior of the Property" prior to the storms.  See *id*.  Atlantic allegedly denied coverage because of these findings. See *id*.; Answer at 5.

Based on the forgoing, DFWS alleges that Atlantic and Vertex "engaged in a results-based investigation to find a non-covered cause of loss to the detriment of [DFWS] and contrary to the clear evidence otherwise."  Complaint at 3.  Atlantic has not made any payments.  See *id*.

## B.  Procedural Background

DFWS initiated this action against Atlantic in Texas state court on July 16, 2020.  *See* Defendant Atlantic Casualty Insurance Company's Notice of Removal ("Removal Notice") (docket entry 1) at 1.  Atlantic removed the case to this court on August 24, 2020.  See *id*. at 5.  DFWS filed an amended complaint on September 17, 2020.  Complaint.  The Complaint alleges breach of contract and breach of the duty of good faith and fair dealing claims along with violations of the Texas Insurance Code and the Texas Deceptive Trade Practices - Consumer Protection Act ("DTPA"). See *id*. at 3-6.  Specifically, DFWS alleges that Atlantic's conduct violated Sections 541.060(a)(1), (2), (3), (4), and (7) of the Texas Insurance Code, and Section 17.50(a)(4) of the DTPA.  Atlantic answered the contract based claims on October 1, 2020.  Answer.  The instant motion to dismiss was filed the same day.  Motion. Atlantic seeks dismissal of the statutory claims only.  *See* Brief in Support of

Defendant Atlantic Casualty Insurance Company's Rule 12(b)(6) Motion to Dismiss Certain of Plaintiff's Claims ("Defendant's Brief") (docket entry 12) at 2. Atlantic asserts that all of the statutory claims fail to satisfy the Rule 12(b)(6) standard, and that the Section 541.060(a)(1) claim for misrepresentation fails the Rule 9(b) particularity standard. See *id*. at 2-6. DFWS filed a response on October 16, 2020. Plaintiff's Response to Defendant's Second Motion to Dismiss, With Brief in Support ("Response") (docket entry 14). Atlantic replied on October 30, 2019. Defendant Atlantic Casualty Insurance Company's Reply to DFWS'S Response to Atlantic Casualty's Motion to Dismiss ("Reply") (docket entry 15). Atlantic's motion is therefore fully briefed and ripe for determination.

II. <u>ANALYSIS</u>

A. <u>Legal Standards</u>

1. *Rule 12(b)(6) Motion to Dismiss*

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)), *cert. denied*, 552 U.S. 1182 (2008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations, quotation marks, and brackets omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* (quoting *Martin K. Eby Construction Company, Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) (internal quotation marks omitted).

The Supreme Court has prescribed a "two-pronged approach" to determine whether a complaint fails to state a claim under Rule 12(b)(6). See *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The court must "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. The court should then assume the veracity of any well-pleaded allegations and "determine whether they plausibly give rise to an entitlement to relief." *Id.* The plausibility principle does not convert the Rule 8(a)(2) notice pleading to a "probability requirement," but "a sheer possibility that a defendant has acted unlawfully" will not defeat a motion to dismiss. *Id.* at 678. The plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[W]here the well-pleaded

-5-

facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id.* at 679 (alteration in original) (quoting FED. R. CIV. P. 8(a)(2)).  The court, drawing on its judicial experience and common sense, must undertake the "context-specific task" of determining whether the plaintiff's allegations "nudge" its claims against the defendant "across the line from conceivable to plausible."  See *id.* at 679, 683.

### 2. *Rule 9(b) Motion to Dismiss*

A complaint need only recite a short and plain statement of the claim showing that the pleader is entitled to relief.  FED. R. CIV. P. 8(a)(2).  When, however, defendants are charged with fraudulent activity, the plaintiff must state with particularity the circumstances constituting fraud.[1]  FED. R. CIV. P. 9(b).  Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  The Fifth Circuit interprets Rule 9(b) strictly, requiring the plaintiff to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain

---

[1]     As the Fifth Circuit has noted, the purpose of the heightened pleading standard of Rule 9(b) is to provide defendants with fair notice of the plaintiff's claims, protect defendants from harm to their reputation and goodwill, reduce the number of strike suits, and prevent a plaintiff from filing baseless claims in an attempt to discover unknown wrongs. *Tuchman v. DSC Communications Corporation*, 14 F.3d 1061, 1067 (5th Cir. 1994).

why the statements were fraudulent." *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177 (5th Cir.), *cert. denied*, 522 U.S. 966 (1997); *Nathenson v. Zonagen Inc.*, 267 F.3d 400, 412 (5th Cir. 2001); see also *Benchmark Electronics, Inc. v. J.M. Huber Corporation*, 343 F.3d 719, 724 (5th Cir. 2003) (stating that Rule 9(b) requires the plaintiff to lay out "the who, what, when, where, and how" of the alleged fraud).  If the facts pleaded in a complaint are within the opposing party's knowledge, fraud pleadings may be based on information and belief.  See *Tuchman*, 14 F.3d at 1068.

Rule 9(b) permits a plaintiff to allege generally the defendant's intent to commit fraud.  FED. R. CIV. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be averred generally.").  A mere allegation that the defendant had the requisite intent, however, will not satisfy Rule 9(b).  *Melder v. Morris*, 27 F.3d 1097, 1102 (5th Cir. 1994); *Tuchman*, 14 F.3d at 1068.  To adequately plead fraudulent intent, the plaintiff must set forth specific facts that support an inference of fraud.  *Tuchman*, 14 F.3d at 1068.  The factual background adequate for an inference of fraudulent intent can be satisfied by alleging facts that show the defendant's motive.  See *id*.

B.  Application

1.  *DFWS's Section 541.060(a)(1) Claim*

Before analyzing the sufficiency of DFWS's factual allegations, the court must make two legal determinations.  First, the court must decide whether subsection

(a)(1) is limited to just misrepresentations about policy terms.  Atlantic argues it is while DFWS argues it is broader.  Next, the court must determine whether the Rule 9(b) particularity standard applies to misrepresentation claims brought under subsection (a)(1).  Atlantic argues that it does, while DFWS argues that it does not. *Compare* Defendant's Brief at 4-5 *with* Response at 7-9.

Section 541.060(a)(1) of the Texas Insurance Code states: "It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to engage in the following unfair settlement practices with respect to a claim by an insured or beneficiary: (1) misrepresenting to a claimant a material fact or policy provision relating to coverage at issue . . . ."  TEX. INS. CODE § 541.060(a)(1).  This court has previously determined that subsection (a)(1) encompasses more than just misrepresentations about the details of a policy.  See *Glidewell v. Safeco Insurance Company of Indiana*, No. 3:15-CV-1099-G, 2015 WL 4868483, at *5 (N.D. Tex. Aug. 13, 2015) (Fish, J.); *Petree v. Metropolitan Lloyds Insurance Company of Texas*, 3:16-CV-0735-G, 2016 WL 4211764, at *2 (N.D. Tex. Aug. 9, 2016) (Fish, J.).  Atlantic's attempt to distinguish *Glidewell* and *Petree* is without merit.  *See* Reply at 3.  The representations at issue were still about facts beyond the four corners of the policy.  The court declines to now deviate from its own precedent nor will it carve out an unprincipled distinction.

That brings the court to the next question: does Rule 9(b) apply to a Section

541.060(a)(1) misrepresentation claim?  The court's *Petree* decision is not dispositive because the court did not actually decide whether Rule 9(b) applies to a subsection (a)(1) misrepresentation claim.  The court simply acknowledged that the complaint was sufficient under any standard.  See *Petree* at *2.  The same rationale is not applicable here because, as DFWS tacitly acknowledged in its briefing, the current complaint lacks information that the *Petree* complaint contained.  See *id.*; *United States ex rel. Williams v. Bell Helicopter Textron*, 417 F.3d 450, 453 (5th Cir. 2005) (requiring, at a minimum, that a plaintiff set forth in the complaint the "who, what, when, where, and how" of any alleged fraud).  Arguably, the current complaint satisfies only the what and how elements.[2]  Therefore, the court must now decide the issue.

To date, the Fifth Circuit has not decided whether Rule 9(b) applies to subsection (a)(1) misrepresentation claims.  Many district courts within the circuit have decided the issue, uniformly finding that Rule 9(b) is applicable.[3]  In fact,

---

[2]   DFWS attempted to circumvent the "who, what, when, where, how" requirements by arguing that the underlying policy rationale for Rule 9(b) is satisfied here.  *See* Response at 9-10.  It did so without any case law citations.  The court is not persuaded without authority supporting that position.

[3]   Here is just a sampling: *Berry v. Indianapolis Life Insurance Company*, 608 F.Supp.2d 785, 800 (N.D. Tex. 2009) (Boyle, J.); *Gonzalez v. State Farm Lloyds,* 326 F.Supp.3d 346, 350-51 (S.D. Tex. 2017) (citing cases)*; Tracy v. Chubb Lloyds Insurance Company*, No. 4:12-CV-0042-A, 2012 WL 2477706, at *8 (N.D. Tex. June 28, 2012) (McBryde, J.); *Khan v. Allstate Fire & Casualty Insurance Company*, No. CIV.A. H-11-2693, 2012 WL 1601302, at *7 (S.D. Tex. May 7, 2012).

DFWS did not cite, and the court has not found, any cases where Rule 9(b) was not applied to a subsection (a)(1) misrepresentation claim.  These facts alone justify following the lead of other district courts in Texas, and until the Fifth Circuit decides otherwise, the court will apply Rule 9(b).

The allegations of the complaint further support applying Rule 9(b).  DFWS casts Atlantic/Vertex's findings as "erroneous and unsupportable."  *See* Complaint at 3.  DFWS further alleges that Atlantic engaged in a "results-based investigation."  *Id*.  The implication is that Atlantic was going to make these findings regardless of what the facts showed and even if Atlantic privately came to a different conclusion.  Thus, DFWS makes at least two different allegations that amount to fraud: that Atlantic misrepresented the integrity of its investigation, and/or that it misrepresented what it privately concluded was the cause of damage.  Rule 9(b) exists to scrutinize such allegations.  See *Melder*, 27 F.3d at 1100.

Having decided that Rule 9(b) does apply, the court now turns to the complaint at issue.  As previously noted, DFWS all but admitted that the complaint lacks elements necessary to satisfy Rule 9(b) scrutiny.  Thus, DFWS's Section 541.060(a)(1) claim is dismissed.  However, the court also grants DFWS's request to replead the claim.  *See* Response at 10.  DFWS will have 14 days to replead its Section 541.060(a)(1) misrepresentation claim(s).

2.  *All Other Statutory Claims*

Atlantic argues that the rest of DFWS's statutory claims should be dismissed because the allegations are conclusory and amount to nothing more than an un-actionable disagreement about the cause of the reported damage.  *See generally* Defendant's Brief; Reply.  The court disagrees.

Curiously, Atlantic seeks dismissal of the statutory claims only and *not* the contract based claims.  See *id*.  It is difficult to see how the contract based claims could be well-pleaded given the theory Atlantic presses for why the statutory claims are not well-pleaded.  All of the "cause of action" paragraphs are in essence conclusory.  But we do not evaluate complaints based on what is written in the cause of action paragraphs alone; we look to the complaint "as a whole."  See *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 289 (5th Cir. 2014); *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 47 (2011).  Atlantic seems to understands this because the unchallenged contract based cause of action paragraphs are as conclusory as the statutory paragraphs.

Atlantic's decision not to challenge the breach of good faith and fair dealing claim is worth further scrutiny.  According to the Texas Supreme Court, insurers owe this duty because "the nature of insurance contracts . . . would allow unscrupulous insurers to take advantage of their insureds' misfortunes in bargaining for settlement or resolution of claims.  In addition, without such a cause of action insurers can

arbitrarily deny coverage and delay payment . . . ." *Arnold v. National County Mutual Fire Insurance Company*, 725 S.W.2d 165, 167 (Tex. 1987).  Insurance companies have "exclusive control over the evaluation, processing and denial of claims." *Id*.  "A cause of action for breach of the duty of good faith and fair dealing is stated when it is alleged that there is no reasonable basis for denial of a claim or delay in payment or a failure on the part of the insurer to determine whether there is any reasonable basis for the denial or delay." *Id*.  Arbitrarily denying coverage, delaying payments, abusing power over the investigative process, and failing to provide a reasonable basis for denying a claim all sounds eerily similar to the bases for liability under Section 541.060 of the Texas Insurance Code.  It all amounts to unfair, bad faith practices. Thus, it is difficult to understand how the common law good faith and fair dealing claim is well-pleaded but the insurance code claims are not.  By not challenging the common law claim, Atlantic implicitly acknowledges that the Texas Insurance Code claims are also well-pleaded and should survive this motion.

Regardless, the statutory claims survive in their own right.   In its complaint, DFWS made several well-pleaded factual allegations that are entitled to the assumption of truth.   See *Ashcroft* 556 U.S. at 679.  For example, DFWS pleaded that the property "has a modified bitumen roof system that is installed flat and fully adheres to the substrate.  A visual inspection of the roof [after the storm] revealed clear evidence of ripples in the modified bitumen . . . [t]he only reasonable cause of

-12-

the damage to the roof system . . . and the ensuing interior leaks was the [storm]."
Complaint at 2. "In addition, the Property has air conditioner condensers installed
on the roof with condensation lines that drain straight into the gutters. Numerous of
these condensation lines were displaced and cracked by the [storm] . . . [t]here is also
collateral impact damage from flying debris . . . ." *Id.* at 2-3. Finally, DFWS pleaded
facts to contradict the findings by Atlantic/Vertex, including "that there were no
observable leaks to the interior of the Property prior to the [storm]." *Id.* at 3.

These well-pleaded allegations suggest that Atlantic was not just wrong in its
findings, but unreasonably so. Not only did DFWS plead facts to support its own
conclusions, but also facts that contradict Atlantic's. That raises at least the plausible
inference that Atlantic's conclusions were outside the realm of possibility. Impossible
and/or improbable findings sound like unreasonable explanations for denying
coverage (subsection (a)3), evidence of bad faith (subsection (a)2), and evidence that
Atlantic did not conduct a reasonable investigation (subsection (a)7).

In its briefing, Atlantic also made what amounts to a slippery slope argument
about letting plaintiffs plead "disagreements" as evidence of misrepresentations or
other insurance code violations. *See generally* Defendant's Brief; Reply. Again, it is
puzzling for Atlantic to make this argument about the insurance code claims but not
the contract based claims since they are supported by the same alleged
"disagreements." Why it is worrisome that disagreements could lead to insurance

-13-

code violations but not for breaches of the duty of good faith is unclear.

Paradoxically, Atlantic's position would likely produce a more untenable result.

Often, the best evidence that an insured will have of a misrepresentation or a bad

faith investigation is a well founded disagreement about the cause of loss.  It is

unlikely that an insured will come to court before discovery with a "smoking-gun"

that proves its case.  How, then, should an insured raise the plausible inference of

impropriety without alleging a disagreement and the factual allegations to back it up?

Pleading a disagreement does not make disagreements *ipso facto* misrepresentations.  A

disagreement may not ultimately amount to a misrepresentation, but a disagreement

likely precedes an alleged misrepresentation.  Atlantic's position would effectively bar

DFWS from pleading facts that are logically intertwined with a misrepresentation.

This is an undesirable outcome.

For these reasons, Atlantic's motion to dismiss the rest of DFWS's Texas

Insurance Code claims is denied.  Because violations of Chapter 541 of the Texas

Insurance Code constitute violations of the DTPA, Atlantic's motion to dismiss the

DTPA claim is also denied.  *See* TEXAS BUSINESS & COMMERCE CODE § 17.50(a)(4).

### III.  CONCLUSION

For the reasons stated above, Atlantic's Rule 12(b)(6) motion to dismiss

DFWS's statutory claims is **GRANTED** in part and **DENIED** in part.  The motion is

**GRANTED** as to DFWS's Section 541.060(a)(1) claim, and that claim is

**DISMISSED WITHOUT PREJUDICE**.  The court further **GRANTS** DFWS's request to replead this claim, and DFWS will have **14 DAYS** to do so.  The motion is **DENIED** as to all other statutory claims.

      **SO ORDERED.**

November 24, 2020.


_A. Joe Fish_
**A. JOE FISH**
**Senior United States District Judge**

-15-